1  John L. Smaha, Esq., Bar No. 95855
   Gustavo E. Bravo, Esq., Bar No. 218752
2  **SMAHA LAW GROUP, APC**
   2398 San Diego Avenue
3  San Diego, California 92110
   Telephone:   (619) 688-1557
4  Facsimile:   (619) 688-1558

5  Attorneys for Debtor, TownCenter Plaza, LLC

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10   In re                              CASE NO.  17-00623-LA11

11   TOWNCENTER PLAZA, LLC              Chapter 11

12                          Debtor.     **PLAN OF REORGANIZATION**

13                                      Judge: Hon. Louise DeCarl Adler

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

PLAN OF REORGANIZATION

## TABLE OF CONTENTS

Page

ARTICLE I.     DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARTICLE II     CLASSIFICATION OF CLAIMS . . . . . . . . . . . . . . . . . . . . . . . 8

2.1    Unclassified Fee Claims . . . . . . . . . . . . . . . . . . . . . 8
2.2    Unclassified Administrative Expense Claims. . . . . . . . . . . 9
2.3    Class 1: Secured Claims . . . . . . . . . . . . . . . . . . . 10
2.4    Class 2: Priority Claims . . . . . . . . . . . . . . . . . . . 12
2.5    Class 3: General Unsecured Creditors . . . . . . . . . . . . 12
2.6    Class 4: Insider Claims . . . . . . . . . . . . . . . . . . . 12
2.7    Class 5: Equity Holders . . . . . . . . . . . . . . . . . . . 12

ARTICLE III.     IMPAIRMENT OF CLAIMS . . . . . . . . . . . . . . . . . . . . . 13

3.1    Impairment of Claims . . . . . . . . . . . . . . . . . . . . 13

ARTICLE IV.     TREATMENT OF CLAIMS . . . . . . . . . . . . . . . . . . . . . . 13

4.1    Fee Claims . . . . . . . . . . . . . . . . . . . . . . . . . . 13
4.2    Administrative Claims . . . . . . . . . . . . . . . . . . . . 14
4.3    Class 1:   Secured Claims . . . . . . . . . . . . . . . . . 15
4.4    Class 2:   Priority Claims . . . . . . . . . . . . . . . . . 16
4.5    Class 3: Non-Insider General Unsecured Claims . . . . . . 17
4.6    Class 4: Insider General Unsecured Claims . . . . . . . . . 18
4.7    Class 5: Equity Holders . . . . . . . . . . . . . . . . . . 18

ARTICLE V.     EXECUTORY CONTRACTS / UNEXPIRED LEASES . . . . . . . 19

5.1    Executory Contracts/Unexpired Leases . . . . . . . . . . . . . . 19
5.2    Rejection Claims . . . . . . . . . . . . . . . . . . . . . . 19

ARTICLE VI.     MEANS FOR IMPLEMENTATION . . . . . . . . . . . . . . . . . . . 20

6.1    Plan Documents . . . . . . . . . . . . . . . . . . . . . . . 20
6.2    Sale of Real Properties . . . . . . . . . . . . . . . . . . . 20
6.3    Claims Against City of Calexico . . . . . . . . . . . . . . . 22
6.4    Claims Against The City of Calexico Facility
        District Refund and Other Potential Claims . . . . . . . . . . 23
6.5    Avoidance Actions and Collections . . . . . . . . . . . . . 24
6.6    Compromise of Controversies . . . . . . . . . . . . . . . . 24
6.7    Approval of Plan Documents . . . . . . . . . . . . . . . . 25
6.8    Liquidation of Debtor's Assets . . . . . . . . . . . . . . . 25
6.9    Reorganized Debtor's Business . . . . . . . . . . . . . . . 25
6.10   Distributions . . . . . . . . . . . . . . . . . . . . . . . 25

ARTICLE VII.     DISTRIBUTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . 25

7.1    Satisfaction of Claims . . . . . . . . . . . . . . . . . . . 25
7.2    Manner of Payment Under Plan . . . . . . . . . . . . . . . 26
7.3    Exemption from Securities Laws . . . . . . . . . . . . . . 26
7.4    Setoffs . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

7.5    Special Tax Provisions . . . . . . . . . . . . . . . . . . . . . . . 26
7.6    Distribution Account . . . . . . . . . . . . . . . . . . . . . . . . . 26
7.7    Transfer of Distribution Assets . . . . . . . . . . . . . . . . 27
7.8    Liquidation of Distribution Assets . . . . . . . . . . . . . . 27
7.9    Distribution Reports . . . . . . . . . . . . . . . . . . . . . . . . . 27

ARTICLE VIII.    PROCEDURES FOR DISPUTED CLAIMS . . . . . . . . . . . . . . . . 28

8.1    Objections to Claims . . . . . . . . . . . . . . . . . . . . . . . . . 28

ARTICLE IX.    DEFAULT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

ARTICLE X.    EFFECT OF CONFIRMATION . . . . . . . . . . . . . . . . . . . . . . . 30

10.1    Vesting of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
10.2    Discharge of Claims . . . . . . . . . . . . . . . . . . . . . . . . . 31
10.3    Discretion to Liquidate Property . . . . . . . . . . . . . . . 31
10.4    Discretion to Modify Secured Claims . . . . . . . . . . . . 32
10.5    Noticed Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
10.6    Term of Injunctions or Stays . . . . . . . . . . . . . . . . . . 32
10.7    Injunction Against Interference With Plan . . . . . . . . . 32
10.8    Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
10.9    Retention of Causes of Action/Reservation of Rights . . . . . 33
10.10   Exculpation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

ARTICLE XI.    RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . 34

ARTICLE XII.    MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . . . . . . . . 36

12.1    Completion of Plan . . . . . . . . . . . . . . . . . . . . . . . . . 36
12.2    Substantial Consummation . . . . . . . . . . . . . . . . . . . . 36
12.3    Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
12.4    Revocation or Withdrawal of this Plan . . . . . . . . . . . 37
12.5    Cramdown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
12.6    Confirmation Order . . . . . . . . . . . . . . . . . . . . . . . . . 37
12.7    Severability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
12.8    Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
12.9    Section 1125(e) of the Bankruptcy Code . . . . . . . . . 38
12.10   Expedited Determination . . . . . . . . . . . . . . . . . . . . . 38
12.11   Time Bar to Payments . . . . . . . . . . . . . . . . . . . . . . . 38
12.12   Fractional Distributions . . . . . . . . . . . . . . . . . . . . . . 39
12.13   Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
12.14   Waiver of Bankruptcy Rule 7062 . . . . . . . . . . . . . . . 39
12.15   Compliance with Tax Requirements . . . . . . . . . . . . . 39
12.16   Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
12.17   Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
12.18   Binding Effect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
12.19   Business Records . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
12.20   Means for Execution of Plan of Reorganization . . . . . 41
12.21   Compliance with Post-Confirmation Reporting
        and U.S. Trustee's Fees . . . . . . . . . . . . . . . . . . . . . . . 41

ARTICLE XIII.    CONCLUDING STATEMENTS BY DEBTOR . . . . . . . . . . . . . 41

Towncenter Plaza, LLC, Debtor and Debtor-in-Possession herein ("Debtor") submits this Plan of Reorganization pursuant to Section 1121(a) of Title 11 of the United States Code:

# ARTICLE I.

## DEFINITIONS

The following terms used in this plan of reorganization shall have the following meanings:

**1.1    Administrative Bar Date:** Shall mean the date specified in Section 2.1 of this Plan, or such other date as may be fixed by order of the Bankruptcy Court, by which an Administrative Expense Claim must be filed, or be forever barred from asserting such Administrative Expense Claim against the Debtor, the Estate, or the Reorganized Debtor or their property.  Notwithstanding the Administrative Bar Date, the United States Trustee is not required to file a proof of claim and is not bound by a bar date.

**1.2    Administrative Expense Claims:** Shall mean any right to payment constituting a cost or expense of administration of the Reorganization Case (other than a Fee Claim) allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate, any actual and necessary costs and expenses of operating the Debtor's business.

**1.3    Allowed Claim:** Shall mean, with reference to any Claim: (a) any Claim against the Debtor which has been listed in the Schedules as liquidated in amount and not disputed or contingent, and for which no contrary or inconsistent proof of claim has been filed; or notwithstanding the Claim being listed in the Schedules as liquidated in an amount and not disputed or contingent, (i) the Debtor has filed an objection to the Claim which has been overruled, or (ii) as to which no objection to allowance has been interposed prior to the deadline by which such objections must be filed in accordance with this Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court and as to which such deadline has expired; (b) any timely filed proof of claim (i) as to which no objection to allowance has been interposed prior to the deadline by

1  which such objections must be filed in accordance with this Plan or such other applicable
2  period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy
3  Court and as to which such deadline has expired, or (ii) as to which an objection has been
4  filed and not withdrawn and such objection has been determined by a Final Order (but only
5  to the extent such objection has been overruled); (c) any Claim which is not a Disputed
6  Claim; or (d) any Claim allowed hereunder. Unless otherwise specified herein or allowed by
7  order of the Bankruptcy Court, Allowed Claims (including Allowed Administrative Expense
8  Claims) shall not, for any purpose under this Plan, include post Petition Date interest on such
9  Claims, unless otherwise provided for under this Plan.

10       **1.4    Assets:** Shall mean all of the right, title and interest of the Debtor in and to
11  property of whatever type or nature (real, personal, mixed, tangible or intangible).

12       **1.5    Avoidance Actions:** Shall mean all claims, rights and causes of action of the
13  Debtor and the Estate that arise under the terms of the Bankruptcy Code, including, but not
14  limited to, all preference, fraudulent conveyance and other causes of action under chapter 5
15  of the Bankruptcy Code, whether or not such litigation has been commenced as of the
16  Effective Date.

17       **1.6    Bankruptcy Code**: Shall mean Title 11 of the United States Code, as amended
18  from time to time, as applicable to the Reorganization Case.

19       **1.7    Bankruptcy Court:** Shall mean the United States Bankruptcy Court for the
20  Southern District of California or any other court exercising competent jurisdiction over the
21  Reorganization Case or any proceeding therein.

22       **1.8    Bankruptcy Rules:** Shall mean the Federal Rules of Bankruptcy Procedure,
23  as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the
24  United States Code, as amended from time to time, applicable to the Reorganization Case,
25  and any Local Rules of the Bankruptcy Court.
26  ///
27  ///
28  ///

---

PLAN OF REORGANIZATION
2

**1.9    Bar Date(s):** Shall mean the original claims bar date of May 31, 2017 or such other dates fixed by order(s) of the Bankruptcy Court or this Plan as the day(s) by which all Persons asserting a certain Claim must have filed proofs of such Claim or be forever barred from asserting such Claim against the Debtor or the estate.

**1.10    Beneficiaries:** Shall mean collectively the holders of Allowed Claims under the Plan, or any successors to such holders' Allowed Claims.

**1.11    Business Day:** Shall mean any day other than a Saturday, a Sunday, or any other day on which nationally chartered banking institutions in San Diego, California are required or authorized to close by law or executive order.

**1.12    Cash:** Shall mean legal tender of the United States of America or a commercially recognized cash equivalent.

**1.13    Causes of Action:** Shall mean any and all of the Debtor's actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and Claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, whether or not such litigation has been commenced as of the Effective Date.

**1.14    Claim:** Shall mean "claim" as defined in section 101(5) of the Bankruptcy Code.

**1.15    Class:** Shall mean a Claim or interest, or a group of Claims or interests, consisting of those Claims or interests which are substantially similar to each other, as classified under the Plan, or a Claim or interest, or a group of Claims or interests, classified by amount as may be reasonable and necessary as an administrative convenience claims, or a group of Claims or interests which are otherwise required to be separately classified.

**1.16    Confirmation Date:** Shall mean the date that the Confirmation Order is entered on the docket of the Bankruptcy Court.

///

1     **1.17**   **Confirmation Hearing:** Shall mean the hearing to be held by the Bankruptcy

2 Court regarding confirmation of this Plan; as such hearing may be adjourned or continued

3 from time to time.

4     **1.18**   **Confirmation Order:** Shall mean the order of the Bankruptcy Court

5 confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

6     **1.19**   **Debtor:** Shall mean TownCenter Plaza, LLC.

7     **1.20**   **Deficiency Claim:** Shall mean, with respect to a Claim that is partially secured,

8 the amount by which the Allowed amount of such Claim exceeds the Debtor's interest in

9 such property that collateralizes the Claim. Debtor believes there are no Deficiency Claims

10 in this bankruptcy.

11     **1.21**   **Disallowed:** (when used in the context of a Claim or Interest) Shall mean the

12 entirety or any portion of any Claim against, or interest in, the Debtor which has been

13 disallowed by a Final Order of the Bankruptcy Court.

14     **1.22**   **Distribution Account:** Shall mean the federally insured bank account to be

15 administered and maintained by the Debtor, which has been created pursuant to and for the

16 purposes set forth in the Plan.

17     **1.23**   **Distribution Assets:** shall mean all property, interests, funds, or other asset

18 available in the Distribution Account for distribution on Allowed Claims and Estate

19 expenses.

20     **1.24**   **Disclosure Statement:** Shall mean the Disclosure Statement that relates to this

21 Plan, as such Disclosure Statement may be amended, modified or supplemented (including

22 all exhibits and schedules annexed thereto or referred to therein).

23     **1.25**   **Disclosure Statement Hearing:** Shall mean the hearing held by the

24 Bankruptcy Court to consider approval of the Disclosure Statement as containing adequate

25 information as required by section 1125 of the Bankruptcy Code, as the same may be

26 adjourned or continued from time to time.

27     **1.26**   **Disputed Claim:** Shall mean any Claim that is not an Allowed Claim as of the

28 relevant date.

**1.27**   **Effective Date:** Shall mean the date that is fourteen (14) calendar days after the Confirmation Date, or, if such date is not a Business Day, the next succeeding Business Day, so long as no stay of the Confirmation Order is in effect on such date; provided, however that if, on or prior to such date, all conditions to the Effective Date set forth in this Plan have not been satisfied, or waived, then the Effective Date shall be the first Business Day following the day on which all such conditions to the Effective Date have been satisfied or waived.

**1.28**   **Estate:** Shall mean the estate of the Debtor in the Reorganization Case created pursuant to section 541 of the Bankruptcy Code.

**1.29**   **Fee Claim:** Shall mean a Claim by a Professional Person for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Reorganization Case.

**1.30**   **Final Order:** Shall mean an order of the Court or of any court of competent jurisdiction which has been entered and which has become final by expiration of the time of an appeal therefrom, or, if an appeal(s) is taken, by resolution of such appeal(s) in favor of one of the parties thereto and the expiration of the time for further appeal(s) therefrom.

**1.31**   **General Unsecured Claim:** Shall mean a Claim against the Debtor, including a Deficiency Claim, but other than a Secured Claim, an Unsecured Priority Claim, an Administrative Expense Claim, a Fee Claim, a Priority Claim or a Tax Priority Claim.

**1.32**   **Insider:** Shall have the meaning ascribed to that term by section 101(31) of the Bankruptcy Code.

**1.33**   **Litigation Actions:** Shall mean all claims, rights and causes of action of the Debtor and the Estate that arise under the terms of the Bankruptcy Code, including, but not limited to, actions already commenced or anticipated.

**1.34**   **Person:** Shall mean any individual, corporation, partnership, association, indenture trustee, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, interest holders, or any other entity.

1      **1.35**   **Petition Date:** Shall mean February 2, 2017.

2      **1.36**   **Plan:** Shall mean this Plan of Reorganization, including, without limitation,
3  any exhibits or schedules hereto, as the same may be amended or modified from time to time
4  in accordance with the provisions of the Bankruptcy Code and the terms hereof.   This Plan
5  is a liquidating plan wherein all assets of the Debtor are to be liquidated to cover claims in
6  the priority and amounts set forth herein below.

7      **1.37**   **Plan Documents**: Shall mean the agreements, documents and instruments
8  entered into on or as of the Effective Date as contemplated by, and in furtherance of, the
9  Plan.

10     **1.38**   **Post-Confirmation Debtor:** Shall mean the Debtor, after the Confirmation
11  Date, but before the Effective Date.

12     **1.39**   **Priority Claims:** Shall mean all claims as defined in sections 507(a)(4), (a)(5)
13  and (a)(7) of the Bankruptcy Code only, excluding claims as defined in sections 507(a)(2),
14  (a)(3), (a)(6), (a)(8) and (a)(9) of the Bankruptcy Code.

15     **1.40**   **Priority Tax Claim:** Shall mean any Claim of a governmental unit against the
16  Debtor of the kind entitled to priority in payment under section 507(a)(8) of the Bankruptcy
17  Code.

18     **1.41**   **Pro Rata:** Shall mean the proportion that the dollar amount of an Allowed
19  Claim in a particular Class or particular Classes bears to the aggregate dollar amount of all
20  Allowed Claims in such Class or Classes.

21     **1.42**   **Professional Person(s):** Shall mean all Persons retained by order of the
22  Bankruptcy Court in connection with the Reorganization Case, pursuant to sections 327, 328,
23  330 or 1103 of the Bankruptcy Code.

24     **1.43**   **Rejection Claim:** Shall mean any Claim arising under section 502(g) of the
25  Bankruptcy Code and any Claim of a holder of an Executory Contract which pursuant to
26  prior Order of Court is allowed as a Claim under section 502(g) of the Bankruptcy Code.

27  ///

28  ///

1    **1.44    Rejection Claims Bar Date:** Shall mean the date that is 30 days after the

2    Effective Date and by which all Persons asserting Claims arising from the rejection of an

3    executory contract or unexpired lease must have filed proofs of such Claims or be forever

4    barred from asserting such Claims against the Debtor or the estate, or other similar order, as

5    may be entered by the Bankruptcy Court.

6    **1.45    Remaining Cash:** Shall mean all Cash in the possession of the Debtor as of

7    the Effective Date.

8    **1.46    Reorganization Case:** Shall mean the case under chapter 11 of the Bankruptcy

9    Code commenced by the Debtor on the Petition Date in the Bankruptcy Court and styled In

10    re TownCenter Plaza, LLC, Case Number 17-00623-LA11.

11    **1.47    Reorganized Debtor:** Shall mean the Debtor on and after the Effective Date.

12    **1.48    Schedules:** Shall mean the schedules of assets and liabilities, lists of holders

13    of Claims, and the statement of financial affairs filed by the Debtor with the Bankruptcy

14    Court, as such schedules and statements may be supplemented or amended.

15    **1.49    Unsecured Claim Distribution:** Shall mean the distribution of Cash by the

16    Debtor to each holder of an Allowed Unsecured Claim as set forth in Section 4.5 of this Plan.

17    **ARTICLE II**

18    **CLASSIFICATION OF CLAIMS**

19    The creditors and other holders of claims against the Debtor are divided into the

20    following classes for purposes hereof unless otherwise noted.

21    **2.1    Unclassified Fee Claims**

22    All Professional Persons seeking allowance by the Bankruptcy Court of a Fee Claim

23    (a) shall file their respective final applications for allowance of compensation for services

24    rendered and reimbursement of expenses incurred by a date that is no later than the date that

25    is forty-five (45) calendar days after the Effective Date and (b) shall be paid by the Debtor,

26    in full from the Disbursement Account, in such amounts as are approved by the Bankruptcy

27    Court (a) upon the later of (i) the Effective Date and (ii) ten (10) calendar days after the date

28    upon which the order relating to the allowance of any such Fee Claim is entered or (b) upon

1  such other terms as may be mutually agreed upon between the holder of such Fee Claim and

2  the Debtor.

3  **2.2    Unclassified Administrative Expense Claims**.

4      Administrative claims are those expenses which are entitled to priority under

5  Bankruptcy Code Section 507(a)(1) and which are, or become, allowed at any time before

6  close of this Chapter 11 case.

7      **2.2.1 Bar Date for Administrative Expense Claims**:    Proofs of

8  Administrative Expense Claims and/or requests for the allowance and payment of

9  Administrative Expense Claims, other than a Fee Claim, unless otherwise required pursuant

10  to a prior order of the Bankruptcy Court, must be filed and served by the date that is no later

11  than forty-five (45) days after the Effective Date. Notwithstanding anything to the contrary

12  herein, no proof of Administrative Expense Claim or application for payment of an

13  Administrative Expense Claim need be filed for the allowance of any: (a) expense or liability

14  incurred in the ordinary course of the Reorganized Debtor's business on or after the Effective

15  Date; (b) Administrative Expense Claim held by a trade vendor, which administrative

16  liability was incurred by the Debtor in the ordinary course of business between the Debtor

17  and such creditor on or after February 2, 2017; or (c) fees of the United States Trustee arising

18  under 28 U.S.C. § 1930 allocable to periods on or after February 2, 2017.   All Claims

19  described in clause (a), (b) and (c) of the immediately preceding sentence shall be paid by

20  the Reorganized Debtor in the ordinary course of business. Any Persons that fail to file a

21  proof of Administrative Expense Claim or request for payment thereof on or before the

22  Administrative Bar Date as required herein, or other applicable order of the Bankruptcy

23  Court, shall be forever barred from asserting such Claim against the Debtor, the estate, the

24  Reorganized Debtor or its property, and the holder thereof shall be enjoined from

25  commencing or continuing any action, employment of process or act to collect, offset or

26  recover such Administrative Expense Claim.

27      **2.2.2**   All fees payable pursuant to 28 U.S.C. § 1930(a)(6) shall be paid by the

28  Debtor on or before the Effective Date.

2.2.3 Upon the disposition of any property (including real or personal property) of the Debtor, the Bankruptcy Court, upon application of the Debtor, may determine the amount of any tax claim accruing as a result of the disposition of said property pursuant to section 503(b)(1)(B) of the Bankruptcy Code.

**2.3    Class 1: Secured Claims**

**2.3.1 Class 1(A): Secured Claim of Liberty Bankers Life Insurance:**

The secured claim of Liberty Bankers Life Insurance ("Liberty") in the amount of $8,000,000 as provided in the Debtor's Schedules is secured on the Debtor's real property by and through a Deed of Trust and a Promissory Note (the "Liberty Note"). The Liberty Note was originally in the amount of $9,200,000 and is dated March 18, 2008. The initial maturity date was November, 2008 and provided for an extended maturity date in March of 2009. A Forbearance Agreement was signed between the parties as of September 1, 2010. A subsequent Forbearance Agreement was entered into between the parties effective as of December 20, 2016. Under this second Forbearance Agreement, the Liberty Note matured on or about January 31, 2017. The amount of the secured claim has yet to be determined and is subject to various factual questions relating to the Applicable Rate initially set at 13% per annum and the Default Interest Rate being the lesser of 18% per annum or the Maximum Lawful Rate as provided in the Liberty Note. Further, the Debtor is informed and believes that Liberty has advanced all outstanding property taxes that were due at the time of the filing of the Chapter 11. This advance will increase the secured claim of Liberty on a dollar for dollar basis and is in the approximate amount of $434,714.00. The claim is subject to the submission of a proof of claim and to the Debtor filing an objection to the scheduled claim and/or a filed proof of claim.

**2.3.2 Class 1(B):  Secured Claim of Scripps Lenders**

The secured claim of Scripps Lenders in the amount of $462,237 as provided in the Debtor's Schedules is secured in a second position on the Debtor's real property best identified as Lots 15, 16, 17, 18, 19 and 26 of the TownCenter Plaza property by and through a Deed of Trust and a Note Secured by Deed of Trust (the "Scripps Note"). The Scripps

1  Note was originally for the amount of $195,000 and was dated as of December 2, 2010. The

2  claim has yet to be determined and is subject to various factual questions relating to the Note

3  Rate of 15% per annum. The Debtor has scheduled the claim at the amount of $462,237.00.

4  The claim is subject to the submission of a proof of claim and to the Debtor filing an

5  objection to the scheduled claim and/or a filed proof of claim.

### 2.3.3 Class 1(C): Secured Claim of Higgs Fletcher & Mack

7  The secured claim of Higgs Fletcher & Mack in the amount of $124,000 as provided

8  in the Debtor's Schedules is secured on all of the Debtor's real property by and through a

9  judgment lien recorded in 2010 in a position subordinate only to the interests of the Class

10  1(A) and 1(B) claims.   The amount of the secured claim has yet to be determined and is

11  subject to interest that has accrued on the claim since the entry of the judgment. The claim

12  is subject to the submission of a proof of claim and to the Debtor filing an objection to the

13  scheduled claim and/or a filed proof of claim.

### 2.3.4 Class 1(D): Secured Claim of Jack Fitzmaurice

15  The secured claim of Jack Fitzmaurice in the amount of $155,000 as provided in the

16  Debtor's Schedules is secured on all of the Debtor's real property by and through a lien

17  recorded in July of 2013. The claim is subordinate to the claims of the Class 1(A), 1(B) and

18  1(C) creditors. The amount of the secured claim has yet to be determined and is subject to

19  interest that has accrued on the claim since the entry of the judgment. The claim is subject

20  to the submission of a proof of claim and to the Debtor filing an objection to the scheduled

21  claim and/or a filed proof of claim.

### 2.3.5 Class 1(E):Secured Claim of Oasis Growth Partners, LLC

23  The secured claim of Oasis Growth Partners, LLC in the amount of $1,790,438.00 as

24  provided in the Debtor's Schedules is secured on the Debtor's real property best identified

25  as Lots 8, 9, 10, 11, 35, 36, 37, 38, 39, 40, 41 and 42 by and through a Deed of Trust and a

26  Note Secured by Deed of Trust (the "Oasis Note"). The claim is subordinate to the interests

27  of the Class 1(A), 1(B), 1(C) and 1(D) creditors.  The Oasis Note was originally for the

28  amount of $1,087,310.70 and was dated May 15, 2015. Subsequent transfers and accrued

interest have increased the Oasis Note to the current amounts scheduled. The Oasis Note has no maturity date per se but requires that payments be made as real properties are sold. Interest on the Oasis Note accrues at 8% per annum.

**2.4    Class 2: Priority Claims**

This class is comprised of claims that are entitled to priority under 11 U.S.C. Section 507.

**2.4.1 Class 2(A):** The Franchise Tax Board filed a proof of claim (#2) for unpaid income taxes in the amount of $20,954.34.

**2.4.2 Class 2(B):** The Imperial County Tax Collector has also been identified by the Debtor as having priority claims in the total amount of $434,714.00. Those claims are for real property taxes that attach to the Debtor's real properties. As provided herein above, the Debtor is informed that certain of the Imperial County Tax Collector claims have been paid by Liberty and that such payments will reduce these claims on a dollar for dollar basis. Additional real property taxes have accrued post-petition.

**2.5    Class 3: General Unsecured Creditors**

This class is comprised of all unsecured claim holders against the Debtor including the above classes whose undersecured portion of their claims are not secured by any assets of the Debtor, if any.

**2.6    Class 4: Insider Claims**

This class is comprised of unsecured management fee claims and administrator fee claims against the Debtor held by administrators or individuals on the board of managers of the Debtor and are thus Insiders of the Debtor. All such claims are subject to the subordination of their claims to all creditors in Classes 1, 2 and 3 pursuant to Section 7.09 of the Debtor's Operating Agreement.

**2.7    Class 5: Equity Holders**

This class is comprised of the Debtor's equity owners who are the equity stakeholders in the assets of the Debtor.

///

# ARTICLE III.

## IMPAIRMENT OF CLAIMS

**3.1   Impairment of Claims:**

The claims of Class 1, Class 3, Class 4 and Class 5 are impaired under the Plan. The claims of all other classes are unimpaired under the Plan. **All impaired classes are entitled to vote as set forth below.**

# ARTICLE IV.

## TREATMENT OF CLAIMS

As provided herein above, this Plan is a liquidating plan wherein all assets of the Debtor will be liquidated in accordance with the terms of this Plan. Each class of claims or interests of Debtor shall be treated as follows:

**4.1   Fee Claims:**

To the best of their knowledge, the Debtor is not fully current with Fee Claims including the Debtor's bankruptcy counsel. However, contingent on approval from the Court, the Debtor will pay all Fee Claims in accordance with the terms of this Plan. Unpaid legal and professional fees that will be owed to Smaha Law Group, APC are estimated to be approximately $100,000 as of the Effective Date of the Plan. The Debtor paid the Smaha Law Group a retainer fee of $30,000 of which $7,008.75 was used pre-petition. The remaining retainer of $22,991.25 will be applied to post-petition fees. As provided above, Fee Claims are to be paid upon the later of the Effective Date or (ii) ten (10) calendar days after the date upon which the order relating to the allowance of any such Fee Claim is entered. Any Fee Claim remaining after the retainer is applied must then be paid on the Effective Date or shortly thereafter. The payment must be made if funds are available. If funds are not available, it must be made as soon as funds are made available to the Debtor. As provided below, the Debtor anticipates requesting administrative carve outs from the sale of the Debtor's real properties to the extent necessary to cover Fee Claims and other Administrative Claims.

///

1    The estimated fees for the Debtor's bankruptcy counsel do not include potential fees
2    and costs that may be incurred in the event the Debtor is forced to litigate the City of
3    Calexico, the City of Calexico Community Facility District Refund and/or Kevin Smith
4    claims discussed in further detail below.  The Debtor would need to fund potential litigation
5    in some way and may seek additional administrative carve outs or may seek other
6    alternatives, including having those matters litigated on a contingency basis.  If litigation is
7    funded on a contingency basis, any recovery from said litigation matters will first be used to
8    cover any Fee Claims incurred as a result of such litigation.

9    In addition to Debtor's counsel, the Debtor has retained a real estate broker,  The
10    Flowers Realty, Inc., to list its properties for sale. The compensation of The Flowers Realty,
11    Inc., depends upon the successful sale of the Debtor's real property and will be based on each
12    transaction.  The Flowers Realty, Inc.'s contracts with the Debtor call for 6% commission
13    on the purchase price of each real property sold.  The Flowers Realty, Inc.'s Fee Claims
14    would be paid from the sale of each real property.

15    The Debtor and the Reorganized Debtor reserve the right to seek administrative carve
16    outs from the sale of any real property in order to cover Administrative Claims, including Fee
17    Claims.

18    **4.2    Administrative Claims:**

19    To the extent that any Administrative Claims have not been paid in the ordinary
20    course of business, the Debtor shall pay outstanding Administrative Claims on the Effective
21    Date of the Plan.  Payment of Administrative Claims will be subject to the Bar Date for
22    Administrative Claims set forth in Section 2.2.1.  If funds are not available to pay
23    Administrative Claims on the Effective Date, the Reorganized Debtor will seek
24    administrative carve outs from any sale of real property noticed for Court approval after the
25    Effective Date.  The Reorganized Debtor will determine the amount necessary to pay
26    Administrative Claims and will seek an appropriate carve out from any pending sale of real
27    property.
28    ///

### 4.3   Class 1:   Secured Claims

The Class 1 secured claims will retain their security interests in full and, except as provided herein, will retain all rights and responsibilities as called for in the originating documents that led to their claims.  Upon confirmation of the Plan, interest on Secured Claims will be based on an interest rate of 6% per annum (the "Plan Rate").  Interest on Class 1 claims, determined as of the Petition Date, will begin to accrue at the Plan Rate as of the Petition Date until each claim is paid in full.

As set forth below, the Debtor will continue its efforts to sell its real properties in order to pay creditors in full.  To the extent that any Secured Claim has not been paid prior to the Effective Date, any sale set to occur after the Effective Date will be noticed for approval by the Bankruptcy Court.  Each sale of any individual lot after the Effective Date will provide for the payment of commissions and other costs of sale first, for payment of the set aside of any administrative carve out sought by the Debtor and approved by the Court, the payment of Class 2(B) priority real property taxes applying to the lot being sold with the net proceeds to be paid to Class 1 secured creditors based on the proportional interest of their secured claims on each individual lot being sold.  This means that the secured claims of any Class 1 creditor will be spread out amongst all lots securing their particular claim.  Any net funds from each sale will be distributed to Class 1 claims based on the priority of their claims at the time until paid in full, including the payment of interest at the Plan Rate, then to Class 3 creditors on a pro rata basis until paid in full and, eventually, to Class 4 creditors until paid in full.  An example of such a sale is provided herein below for further clarification.  All of the Debtor's Real Properties must be liquidated no later than December 31, 2019.

In the event that the Debtor obtains funds from a recovery on any of its litigation claims before all real properties are sold and before Class 1 Claims are paid in full, the net proceeds of any litigation claims will be paid in the following order: First to any outstanding Administrative Claims, including Fee Claims; Second, to any outstanding Class 2(A) claims, then to Class 1 claims on a Pro Rata basis based on their claims at the time of the payment, including accrual of interest at the Plan Rate; Third to Class 2(B) claims on a Pro Rata basis

1   until paid in full; Fourth to Class 3 Non-Insider General Unsecured Claims on a Pro Rata

2   basis until paid in full; Fifth, to Class 4 Subordinated General Unsecured Claims on a Pro

3   Rata basis until paid in full; Finally, to Class 5 equity holders on a pro rata basis.  In any

4   event, Class 1 claims will be paid in full, with interest at the Plan Rate, no later than

5   December 31, 2019.  Class 1 claims are impaired by the Plan.

6       **4.4     Class 2:   Priority Claims**

7           The Class 2 claims are made up of the Franchise Tax Board's (the "FTB") Class 2(A)

8   claim of $20,954.34 and the Class 2(B) Imperial County Tax Collector in an unknown

9   amount.

10          **4.4.1 Class 2(A):** The FTB claim must be paid before the California Secretary

11  of State will allow the Debtor to be revived as an entity in good standing with the state of

12  California ("Revivor").  In order to complete the Revivor, the FTB claim will be paid when

13  funds first become available to the Debtor.  In the event this claim has not been paid in full

14  prior to the Effective Date, the Debtor will seek to pay this claim in full, with interest

15  accruing in accordance with California Law, from the first sale of any of the Debtor's real

16  properties occurring after the Effective Date.  Under any circumstances, the Class 2(A) claim

17  will be paid in full, with interest, no later than December 31, 2019.  As the Class 2(A) claims

18  are paid in accordance with the Bankruptcy Code's requirements for priority claims with

19  interest accruing at the legal statutory rate, this claim is not impaired by the Plan.

20          **4.4.2 Class 2(B):**  The amount of the  Imperial County Tax Collector claims

21  will be confirmed as of the Effective Date with interest accruing in accordance with

22  California law as reduced by any payments made by Liberty as provide herein above.  After

23  the Effective Date and to the extent the Class 2(B) claims have not been paid prior to the

24  Effective Date, the Debtor will make payments on Class 2(B) claims on the sale of every lot

25  sold based on the outstanding Class 2(B) claim related to the specific lot being sold.  This

26  will include any post petition real property taxes accrued and unpaid.

27  ///

28  ///

1    Debtor anticipates that the Imperial County Tax Collector claims will be paid in full

2   prior to the statutory deadline that is five years after the Petition Date with interest at the

3   statutory rate provided under California Law as plan payments to Class 2 must be completed

4   on or before December 31, 2019.   The Debtor is informed and believes that the current

5   interest rate applied to unpaid FTB taxes is four percent (4%) per annum, however, the

6   Debtor will agree to whichever interest rate applies to the outstanding debt owed by the

7   Debtor, so long as it is consistent with California law.

8    As provided above, to the extent a sale of real property generates cash above the Class

9   1 claims, the Class 2(B) claim applicable to that property, Administrative Claims and Fee

10  Claims, the remaining net proceeds from such a sale will be applied to Class 2(B) claims

11  until paid in full. As this Plan provides that priority claims must be paid within the statutory

12  deadline with interest accruing at the appropriate legal rates, the Class 2 claims are

13  unimpaired.

14    **4.5    Class 3: Non-Insider General Unsecured Claims**

15    This class is comprised of all unsecured claim holders against the Debtor, excluding

16  subordinated, insider claims  The Debtor has calculated all claims to equal $69,830.91

17  excluding the claims of the Class 4 subordinated insider claims.

18    If there are funds remaining from the Debtor's sale of its real properties and/or from

19  the recoveries made from any and all Litigation Actions, the Class 3 claims will be paid from

20  available proceeds after Administrative Claims, Fee Claims, Class 1 and Class 2 claims have

21  been paid in full as set forth in Sections 4.1 through 4.3 herein above.   The Class 3 claims

22  will be paid on the Effective Date from available cash sources and the subsequent sale of real

23  properties or from other recoveries discussed herein below. If there are funds available for

24  distribution, they will be distributed to Class 3 claims on a pro rata basis. The Debtor shall

25  have until December 31, 2019 to complete its Plan and make all Plan distributions. Interest

26  shall accrue on these claims, commencing on the Effective Date, at the federal judgment rate

27  in effect on the Effective Date. It should be noted that Class 3 claims are not guaranteed

28  payment in full as the Debtor may complete the liquidation of all of its assets under the Plan

1  and the net proceeds from this liquidation may not be enough to pay all Class 3 claims in full.

2  As such, the Class 3 claims are Impaired under the Plan.

3  **4.6    Class 4: Insider General Unsecured Claims**

4  This class is comprised of all unsecured claims held by Insiders. The Debtor has

5  calculated all claims to equal $2,964,507.00 at this time, however, the Debtor anticipates

6  filing an objection to the Proof of Claim filed by Stephen and Marianne Harmon (the

7  "Harmon Claim"). The Proof of Claim is in the amount of $1,553,957.40. The Debtor

8  believes the Class 3 Harmon Claim is limited to the scheduled amount of $94,000 with any

9  other amounts to be treated as Class 5 Equity Claims. If the objection is sustained, or the

10  Harmons agree to revise their claim voluntarily, the Class 4 claims will total $1,234,550.

11  If there are funds remaining from the Debtor's sale of its real properties and/or from

12  the recoveries made from any and all Litigation Actions, the Class 4 claims will be paid, if

13  at all, from available proceeds after Administrative Claims, Fee Claims, Class 1, Class 2 and

14  Class 3 claims have been paid in full as set forth in Sections 4.1 through 4.4 herein above.

15  The Class 4 claims will be paid on the Effective Date from available cash sources and the

16  subsequent sale of real properties or from other recoveries discussed herein below. If there

17  are funds available for distribution, they will be distributed to Class 4 claims on a pro rata

18  basis. The Debtor shall have until December 31, 2019 to complete its Plan and make all Plan

19  distributions. Interest shall accrue on these claims, commencing on the Effective Date, at the

20  federal judgment rate in effect on the Effective Date. It should be noted that Class 4 claims

21  are not guaranteed payment in full as the Debtor may complete the liquidation of all of its

22  assets under the Plan and the net proceeds from this liquidation may not be enough to pay all

23  Class 3 claims in full. As such, the Class 3 claims are Impaired under the Plan.

24  **4.7    Class 5: Equity Holders**

25  The Equity Interests of the owners of the Debtor shall not receive any payment under

26  the Plan and shall not receive any distributions on account of their interests Classes 1 through

27  4 are paid in full. In this regard membership interest in the Debtor shall remain with the

28  Debtor until all Plan Payments are made in full. It should be noted that Class 5 claims may

1   not receive any distribution under the Plan as the liquidation of the Debtor's assets may not

2   generate enough Cash to pay all creditors in full.

3        The Reorganized Debtor will not retain any of the Debtor's Real Properties after

4   December 31, 2019 as this Plan provides that all real properties owned by the Debtor must

5   be sold prior to December 31, 2019. Litigation claims and other claims against third parties

6   must be liquidated within sixty (60) months of the Effective Date. It is anticipated, at this

7   time, that equity holders will not maintain the Reorganized Debtor after the Plan unless

8   certain claims survive after that date and the claims of creditors have been paid in full. Class

9   5 creditors are Impaired under the Plan. For purposes of the Plan, Class 5 creditors are not

10  allowed to vote, however, it is anticipated that all Class 5 Equity Holders will support the

11  Plan.

12                              **ARTICLE V.**

13                **EXECUTORY CONTRACTS / UNEXPIRED LEASES**

14      **5.1    Executory Contracts/Unexpired Leases:**

15       Unless otherwise expressly assumed in writing prior to the Effective Date of the Plan,

16  or otherwise specifically provided for below, all pre-petition executory contracts and leases

17  of the Debtor shall be deemed rejected upon the Effective Date of the Plan. In the instant

18  case, the Debtor is assuming all Class 1 secured claims to the extent that they could be

19  deemed to be executory contracts.

20      **5.2    Rejection Claims**

21       Except as otherwise ordered by the Bankruptcy Court, in the event that the rejection

22  of an executory contract or unexpired lease by the Debtor pursuant to this Plan results in

23  damages to the other party or parties to such contract or lease, a Claim for such damages shall

24  be forever barred and shall not be enforceable against the Debtor or the Reorganized Debtor,

25  unless a proof of claim has been filed with the Bankruptcy Court and served upon counsel

26  for the Debtor on or before the Rejection Claims Bar Date. If there are no objections to the

27  Rejection Claim, or to the extent the Rejection Claim later becomes an Allowed Claim, the

28  Rejection Claim shall be classified and treated as provided in Sections 3 and 4 of this Plan.

# ARTICLE VI.

## MEANS FOR IMPLEMENTATION

**6.1    Plan Documents:** On the Effective Date the Reorganized Debtor shall execute and deliver the Plan Documents, if any, as the case may be and as required hereunder.

**6.2    Sale of Real Properties:** As provided above, the Debtor owns a total 36 lots commonly referred to as the TownCenter Industrial Park. The address is identified as NWC W. Cole Road & Sunset Boulevard, Calexico, California 92231. The 36 properties have the following tax parcel numbers and appraised values:

| | | | |
|---|---|---|---|
| 1. | 059-541-002 | (Lot 6) | Value: $300,670 |
| 2. | 059-541-001 | (Lot 7) | Value: $500,940 |
| 3. | 059-542-006 | (Lot 8) | Value: $298,618 |
| 4. | 059-542-007 | (Lot 9) | Value: $544,658 |
| 5. | 059-542-008 | (Lot 10) | Value: $503,521 |
| 6. | 059-542-009 | (Lot 11) | Value: $285,577 |
| 7. | 059-543-001 | (Lot 12) | Value: $311,369 |
| 8. | 059-543-002 | (Lot 13) | Value: $200,376 |
| 9. | 059-543-003 | (Lot 14) | Value: $238,850 |
| 10. | 059-543-004 | (Lot 15) | Value: $238,850 |
| 11. | 059-543-005 | (Lot 16) | Value: $207,336 |
| 12. | 059-543-006 | (Lot 17) | Value: $225,365 |
| 13. | 059-543-007 | (Lot 18) | Value: $477,552 |
| 14. | 059-543-008 | (Lot 19) | Value: $462,432 |
| 15. | 059-541-021 | (Lot 21) | Value: $323,854 |
| 16. | 059-541-020 | (Lot 22) | Value: $418,549 |
| 17. | 059-541-019 | (Lot 23) | Value: $573,809 |
| 18. | 059-541-018 | (Lot 24) | Value: $627,918 |
| 19. | 059-541-017 | (Lot 25) | Value: $673,334 |
| 20. | 059-541-016 | (Lot 26) | Value: $678,606 |
| 21. | 059-541-015 | (Lot 27) | Value: $621,327 |
| 22. | 059-541-014 | (Lot 28) | Value: $601,234 |
| 23. | 059-542-002 | (Lot 35) | Value: $300,426 |
| 24. | 059-542-003 | (Lot 36) | Value: $381,308 |
| 25. | 059-542-013 | (Lot 37) | Value: $260,079 |
| 26. | 059-542-004 | (Lot 38) | Value: $296,139 |
| 27. | 059-542-012 | (Lot 39) | Value: $460,722 |
| 28. | 059-542-005 | (Lot 40) | Value: $538,448 |
| 29. | 059-542-011 | (Lot 41) | Value: $516,529 |
| 30. | 059-542-010 | (Lot 42) | Value: $475,267 |
| 31. | 059-543-014 | (Lot 43) | Value: $374,491 |
| 32. | 059-543-013 | (Lot 44) | Value: $222,097 |
| 33. | 059-543-012 | (Lot 45) | Value: $250,654 |
| 34. | 059-543-011 | (Lot 46) | Value: $239,766 |
| 35. | 059-543-010 | (Lot 47) | Value: $201,181 |
| 36. | 059-543-009 | (Lot 48) | Value: $218,675 |
| 37. | 059-542-001 | (Lot 49) | Value: $      0 |
| TOTAL | | | Value: $14,050,529 |

As provided, there is a thirty-seventh lot that has little or no value and may be non-transferrable included in these parcel numbers. The legal description of these properties is "Lots 6-19, 21-28 and 43-49 of TownCenter Industrial Plaza of Calexico." (The "Debtor's Real Properties"). The Debtor has retained a broker to list the Debtor's Real Properties for sale. The Debtor is in the process of attempting to sell the Debtor's Real Properties in order to make distributions to creditors in the order provided herein above in Sections 4.1 through 4.6 above.

As provided above, each sale of the Debtor's Real Properties will be handled by a noticed motion before the Bankruptcy Court. Each motion shall identify the lot to be sold and will provide for distributions in accordance with Sections 4.1 through 4.6 above. Each individual lot will likely be sold at a different price and the security interests of Class 1 creditors apply to certain lots differently to other lots. As such, each sale will result in a different distribution scheme. By way of example, assuming a sale of Lot 8 for a purchase price of $300,000 (for ease of use). The sale proceeds would first go towards the costs of sale, including the 6% commission of The Flowers Realty, Inc. For this example, the costs of sale are assumed to be a total of 8% of the purchase price, or $24,000. After these are paid, the Debtor may seek to have an administrative carve out taken from the proceeds. For this example, a $9,000 carve out is assumed based on 3% of the purchase price. Thereafter, the sales proceeds would be used to pay Class 2(A) claims if they continue to be due and owing. Assuming this would be the first and only sale of real property at the time, the Debtor would seek to pay the approximately $21,000 owed on Class 2(A) for the Revivor of the Debtor. Thereafter, the Debtor would seek to pay the outstanding Class 2(B) that applies to Lot 8, herein assumed to be $9,500 (although the amount may have been paid in some amount as provided above). At that point, the transaction will look as follows:

| | |
|---|---|
| Sale Proceeds | $300,000 |
| Less: Costs of Sale | <$24,000> |
| Less: Carve Out | < $9,000> |
| Less: Class 2(A) | <$21,000> |
| Less: Class 2(B) | < $9,500> |
| Net proceeds: | $236,500 |

Thereafter, payments would be made to Class 1 creditors based on the proportional interests of their secured claims on the lot being sold.  In this instance, Classes 1(A), 1(C), 1(D) and 1(E) hold secured claims against Lot 8, excluding Class 1(B).  Lot 8 is 1.426% of the total value of the Debtor's Real Properties and the Debtor would pay 1.426% of the total claims owed to Classes 1(A), 1(C), 1(D) and 1(E), including accrued interest.  Again assuming this was the first sale to occur, the distributions would be as follows:

| | | |
|---|---|---|
| Class 1(A) | Total Claim $8,000,000 (est.) x 1.426% = | $114,080. |
| Class 1(C) | Total Claim $124,000 (est.) x 1.426% = | $1,768.24. |
| Class 1(D) | Total Claim $155,000 (est.) x 1.426% = | $2,210.30. |
| Class 1(E) | Total Claim $1,087,310.70 (est.) x 1.426% = | $15,505.05 |
| | TOTAL DISTRIBUTED | $133,563.59. |

This distribution would ensure that Class 1 creditors receive their respective shares of their secured claim on each lot that is sold.  Thereafter, the remaining net proceeds, here $102,936.41, would then be paid to all Class 1 creditors in the order of priority on the individual lot(s) being sold, to further reduce their secured claims.  Once Class 1 creditors are paid in full, net proceeds from each lot sale will be paid pro rata to creditors in Classes 2, 3, 4 and 5 in order of priority after the payment of costs of administration.  As Class 1 holds secured claims of approximately $9,828,547.70, it will require a significant portion of all of Debtor's Real Properties to be sold before Classes 2, 3, 4 and 5 receive any distribution.  The sale of the Debtor's Real Properties may not generate enough Cash to pay significant amounts to Classes 3, 4 and 5.  As previously provided, Class 2 will be receiving proceeds from each sale above Class 1 claims.  As previously provided, Debtor's Real Properties must be sold by December 31, 2019.

**6.3    Claims Against City of Calexico:** The Debtor's Real Properties were to have access to the power grid by and through the Imperial Irrigation District and the Irrigation District built up the electrical for the Debtor's Real Properties.  The City of Calexico received federal funding for the build out of infrastructure and roads for the Debtor's Real Properties development.  Unfortunately, the city built the roads at a higher elevation than was required under the approved construction plans and the Final Map.  The elevated street levels created a situation where certain of the electrical equipment at the Debtor's Real

1  Properties are now subgrade and are therefore subject to potential flooding in the event of
2  rain or water leaks.  As a result, the City of Calexico has refused to electrify the Debtor's
3  Real Properties and the electrical system needs significant work for it to be brought to the
4  level required to prevent potential flooding.  The cost of these upgrades has been estimated
5  as being between $250,000 and $600,000.  The Debtor believes it was the City of Calexico's
6  breaches of its agreements with the Debtor and/or its negligence that have led to the need for
7  these upgrades.  The Debtor is investigating the potential for litigating these issues with the
8  City of Calexico.  The Debtor has estimated the value of these claims as being approximately
9  $800,000.  Within the 60 months after the Effective Date,  the Reorganized Debtor shall
10  deposit into the Distribution Account any net recovery by the Reorganized Debtor on these
11  claims.  For the purposes hereof, the term net recovery shall mean the gross dollars collected
12  less all attorneys fees and normal costs, including experts and employee overhead expended
13  in the collection thereof.  The Plan provides that this claim will be liquidated, if at all, within
14  60 months of the Effective Date.

15  **6.4    Claims Against The City of Calexico Facility District Refund and Other**
16  **Potential Claims:** As part of the construction of the Debtors' Real Properties, the City of
17  Calexico Facility District reserved funding and agreed to the issuance of bonds to refund
18  construction costs as an incentive to the development of the Debtors' Real Properties.  The
19  requirement to issue those bonds and release any reserves as a refund is dependent upon the
20  establishment of structure on the Debtors' Real Properties.  The Debtor has estimated the
21  value of this claim at approximately $5,000,000.  As with the claims against the City of
22  Calexico, the Debtor is investigating the potential for seeking recovery on these claims in
23  order to satisfy the creditors in this bankruptcy, including methods that may allow the Debtor
24  to liquidate this potential asset during the life of the Plan.  Within the 60 months after the
25  Effective Date, the Reorganized Debtor shall deposit into the Distribution Account any net
26  recovery by the Reorganized Debtor on these claim.  For the purposes hereof, the term net
27  recovery shall mean the gross dollars collected less all attorneys fees and normal costs,
28  including experts and employee overhead expended in the collection thereof.

The Debtor also has potential claims against the individual, Kevin Smith, and/or an entity Mr. Smith controls, believed to be, Smith Capital, L.P., and the Debtor is investigating the validity and value of such claims. If the Debtor chooses to seek any recovery against Mr. Smith, within the 60 months after the Effective Date, the Reorganized Debtor shall deposit into the Distribution Account any net recovery by the Reorganized Debtor on these claims. For the purposes hereof, the term net recovery shall mean the gross dollars collected less all attorneys fees and normal costs, including experts and employee overhead expended in the collection thereof. The Plan provides that these claims will be liquidated, if at all, within 60 months of the Effective Date.

**6.5    Avoidance Actions and Collections:** All avoidance actions assertable by the Debtor-in-Possession, pursuant to Sections 542 through 553 of the Bankruptcy Code, shall be retained by the Reorganized Debtor. From the Effective Date until December 31, 2019, the Reorganized Debtor shall deposit into the Distribution Account all of the net recovery by the Reorganized Debtor on all Avoidance Actions, actions for the recovery of any pre-petition debt owed to the Debtor of any other cause of action (the "Avoidance Collections"). For the purposes hereof, the term net recovery shall mean the gross dollars collected less all attorneys fees and normal costs, including experts and employee overhead expended in the collection thereof. Debtor has reviewed its financial records and, to date, has not identified any potential Avoidance Actions at the time of the drafting of this Plan and does not anticipate filing any such Avoidance Actions.

**6.6    Compromise of Controversies:** Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to this Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or

settlements, and all other compromises and settlements provided for in this Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the estate, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

**6.7    Approval of Plan Documents:** The solicitation of votes on this Plan shall be deemed a solicitation for the approval of the Plan Documents and all transactions contemplated hereunder, if any. Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions.

**6.8    Liquidation of Debtor's Assets:**  From and after the Effective Date, all proceeds of the Reorganized Debtor's sale of assets shall be used to implement this Plan and shall be devoted to the payment of Expenses and of distributions to Allowed Claims.  In the event that the Reorganized Debtor defaults, the Debtor's assets will be liquidated by and through the appointment of a liquidating trustee or the conversion of the Reorganized Debtor's case to Chapter 7.

**6.9    Reorganized Debtor's Business:** After the Effective Date of the Plan, the Reorganized Debtor will continue managing the Debtor's Real Properties and pursuing any potential recovery against the City of Calexico, the City of Calexico Facility District.

**6.10    Distributions**: On the Effective Date or as soon thereafter as funds exist in the Disbursement Account and in accordance with the terms of this Plan, the Debtor shall pay (or reserve sufficient amounts to pay) all remaining Allowed Claims to those claimants holding Administrative Expense Claims, Fee Claims, Secured Claims, Priority Claims and General Unsecured Claims.

**ARTICLE VII.**

**DISTRIBUTIONS**

**7.1    Satisfaction of Claims**: Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction and discharge of such Allowed Claims.

///

**7.2    Manner of Payment Under Plan:**  Except as specifically provided herein, at the option of the Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer, or as otherwise required or provided in applicable agreements.

**7.3    Exemption from Securities Laws:**  The issuance of any securities pursuant to this Plan shall be exempt from any securities laws registration requirements to the fullest extent permitted by section 1145 of the Bankruptcy Code.

**7.4    Setoffs:**  The Debtor or the Reorganized Debtor, as applicable, may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim, and the distributions to be made pursuant to this Plan on account of such Claim, Causes of Action of any nature that the Debtor or Reorganized Debtor may hold against the holder of such Allowed Claim; provided that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtor or Reorganized Debtor of any Causes of Action that the Debtor or the Reorganized Debtor may possess against such holder.

**7.5    Special Tax Provisions:**  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

**7.6    Distribution Account:**  The Debtor shall fund the Distribution Account from the funds available from the liquidation of all assets, to the extent necessary.  As expressed above, the Debtor shall pay all Administrative Expenses at, or around, the time of the Effective Date unless agreed to differently by the Administrative Claimants.

///

///

7.7 **Transfer of Distribution Assets**: Pursuant to the terms of the Plan, the Reorganized Debtor shall grant, release, assign, transfer and deliver the Distribution Assets into the Distribution Account as of the Effective Date until December 31, 2019. The Distribution Assets are to be held for the benefit of the holders of Claims against the Reorganized Debtor and to be applied as specified in the Plan, the Confirmation Order, the Plan Documents, and any other orders relating thereto. The Distribution Assets which the Reorganized Debtor shall grant, release, assign, transfer and deliver to the Distribution Agent as of the Effective Date and until December 31, 2019 shall consist of the (i) Distribution Assets, (ii) net recoveries from Litigation Actions, and (iii) the net income per month generated from the Reorganized Debtor's business operations after salaries are paid to the Reorganized Debtor, if any.

7.8 **Liquidation of Distribution Assets**: From and after the Effective Date, the Reorganized Debtor is empowered to distribute assets from the Distribution Account in accordance with the terms and conditions of the Plan.

7.9 **Distribution Reports**: The Reorganized Debtor will provide Quarterly Reports summarizing Distribution Account transactions, including an itemization of all deposits and withdrawals. The Reorganized Debtor will provide the Quarterly Report to the Court and will serve the report on the United States Trustee and any creditor that formally requests a copy by written request to the Reorganized Debtor or the Reorganized Debtor's counsel. The Quarterly Report will provide total deposits and withdrawals, a description of each deposit and withdrawal and a total balance for the Distribution Account. The Quarterly Report will not summarize or provide additional detail on the Reorganized Debtor's business operations, if any.

The Reorganized Debtor will provide Operating Reports as required, although the level of detail will be subject to the same caveats identified in the Reorganized Debtor's Business Operations Section of the Disclosure Statement. Notwithstanding any other provision the Reorganized Debtor's Quarterly Reports will substantially conform to the Post-Confirmation Report, required by 28 U.S.C. § 586(a)(3)(D) and 11 U.S.C. § 1106(a)(1). The

1 Quarterly Report will stop when, and if, the Debtor seeks and obtains an order finding that

2 the Plan has been substantially consummated under 11 U.S.C. § 1101.

3       The Reorganized Debtor shall not incur responsibility or liability by reason of any

4 error of law or any matter or thing done or suffered or omitted to be done under any

5 Quarterly Report, except for willful misconduct, breaches of fiduciary duty, or negligence.

6 No claim or cause of action shall lie against the Reorganized Debtor if a misstatement or

7 omission is corrected by an amendment.

8 **ARTICLE VIII.**

9 **PROCEDURES FOR DISPUTED CLAIMS**

10     **8.1**    **Objections to Claims**:  Other than with respect to Fee Claims, only the

11 Reorganized Debtor shall be entitled to object to Claims, including any Claim which has

12 been listed by the Debtor in the Schedules in an amount not disputed or contingent. Any

13 objections to such Claims (other than Fee Claims) shall be served and filed on or before the

14 later of: (a) ninety (90) days after the Effective Date; (b) thirty (30) days after a request for

15 payment or proof of Claim is properly filed and served upon the Debtor; or © such other date

16 as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in

17 clause (a) hereof. Notwithstanding any authority to the contrary, an objection to a Claim shall

18 be deemed properly served on the claimant if the Reorganized Debtor effects service in any

19 of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as

20 modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a

21 claimant is unknown, by first class mail, postage prepaid, on the signatory of the proof of

22 claim as well as all other representatives identified in the proof of claim or any attachment

23 thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the

24 claimant's behalf in the Reorganization Case (so long as such appearance has not been

25 subsequently withdrawn). This Plan shall not affect any party's rights to object to Fee Claims.

26     **8.2**    **Payments and Distributions with Respect to Disputed Claims**: To the

27 extent a Claim is a Disputed Claim, the Reorganized Debtor shall not be required to make

28 a distribution of the applicable disputed portion of a payment to the holder of such Disputed

1    Claim which would otherwise be payable to the holder of a Disputed Claim. Instead such

2    Disputed Claim shall be reserved for pending allowance or disallowance.  In the event that

3    a Disputed Claim is subsequently allowed, the Reorganized Debtor shall thereafter pay the

4    appropriate amount to the holder of the Claim in accordance with the terms of the Plan and

5    in the same manner as any other creditor of the same Class.

6                                    **ARTICLE IX.**

7                                    **DEFAULT**

8         **9.1**    The automatic stay provided in 11 U.S.C. § 362 shall continue in force as

9    against property of the Post-Confirmation Debtor after the Effective Date and all creditors

10   shall be bound by the terms and conditions of the Plan.  A default in a distribution payment

11   to a creditor will occur under the following circumstances:

12            9.1.a.    Administrative Expense Claims: All outstanding Administrative

13   Expense Claims will be fully paid in accordance with the Plan.  After the Effective Date, if

14   the Reorganized Debtor does not make a required deposit into the Distribution Account, fails

15   to make a distribution under the Plan and/or  fails to make payments into the Distribution

16   Account within ten days after the conclusion of each year after the Effective Date, the Debtor

17   shall be in default under the Plan. Upon default, Administrative Expense Claimants may take

18   any action available to them under applicable bankruptcy law, including but not limited to

19   the filing of a noticed motion to seek the appointment of a Liquidating Trustee to sell secured

20   properties and administer the plan, provided that any such default continues after five (5)

21   days notice to the Reorganized Debtor and its counsel and the failure of the Reorganized

22   Debtor to cure any such default.

23            9.1.b.    Secured Creditors: A default will occur as to payment on a secured

24   claim if the Reorganized Debtor fails to make the required payments to the Secured Creditor

25   under the Plan within thirty (30) days of the date due, i.e. within 30 days of the closing of any

26   sale or if the Debtor has not liquidated all of the Debtor's Real Properties on or before

27   December 31, 2019.  In the event of any default, the Secured Creditor may then take any

28   action available to them under applicable bankruptcy law including but not limited to seeking

1 to foreclose on the underlying security or to seek any remedies available under state law for

2 breach of contract, provided that any such default continues after ten (10) days notice to the

3 Reorganized Debtor and its counsel and the failure of the Reorganized Debtor to cure any

4 such default.

5       **9.2**   <u>Priority Claims</u>: A default will occur as to payment on the Priority Claims if

6 the Reorganized Debtor does not make required payments within ten days of payments

7 becoming due after the Effective Date if the Debtor has not sold all of the Debtor's Real

8 Properties on or before December 31, 2019 or if the Debtor has not liquidated its claims

9 against the City of Calexico, the City of Calexico Facility District, and/or Kevin Smith within

10 60 months of the Effective Date. . In the event of any default, Priority Claimants may make

11 a noticed motion to seek the appointment of a Liquidating Trustee to sell real properties and

12 administer the plan, provided that any such default continues after ten (10) days notice to the

13 Reorganized Debtor and its counsel and the failure of the Reorganized Debtor to cure any

14 such default.

15       **9.3**   <u>General Unsecured Claims</u>: A default will occur as to payment on the General

16 Unsecured Claims if the Reorganized Debtor does not make required payments within ten

17 days of payments becoming due after the Effective Date, if the Debtor has not sold all of the

18 Debtor's Real Properties on or before December 31, 2019 or if the Debtor has not liquidated

19 its claims against the City of Calexico, the City of Calexico Facility District, and/or Kevin

20 Smith within 60 months of the Effective Date. In the event of any default, General

21 Unsecured Claimants may make a noticed motion to seek the appointment of a Liquidating

22 Trustee to sell secured properties and administer the plan, provided that any such default

23 continues after ten (10) days notice to the Reorganized Debtor and its counsel and the failure

24 of the Reorganized Debtor to cure any such default.

25 **ARTICLE X.**

26 **EFFECT OF CONFIRMATION**

27       **10.1**   **Vesting of Assets:** Except for leases and executory contracts that have not yet

28 been assumed or rejected (which leases and contracts shall be deemed vested when and if

assumed), all property of the estate shall vest in the Reorganized Debtor, free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided herein or in the Confirmation Order. The Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as otherwise provided herein.

**10.2    Discharge of Claims:** Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made thereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against or in the Debtor or any of its Assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as otherwise provided in the Plan, upon the Effective Date, all Claims against the Debtor shall be, and shall be deemed to be, discharged whether or not a proof of Claim or proof of interest was filed with respect thereto.

**10.3    Discretion to Liquidate Property:** Except as otherwise provided herein or in the Confirmation Order, the Reorganized Debtor shall have the discretion beginning immediately after the Effective Date and continuing until December 31, 2019, to liquidate any real property by sale ("Proposed Sales"). Reorganized Debtor must file a noticed motion to applicable Secured Creditors if proceeds from any sale of real property do not exceed the applicable Allowed Secured Claims. Available proceeds shall be distributed pursuant to the applicable sections hereof, and the Reorganized Debtor shall be deemed discharged of the secured claim and released under and to the fullest extent provided under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever secured by that real property, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code. Upon the Effective Date, all holders of Secured Claims on the liquidated real property shall be forever precluded and enjoined from prosecuting or asserting any such discharged Claim against the Debtor or the

Reorganized Debtor.

**10.4    Discretion to Modify Secured Claims:** Except as otherwise provided herein or in the Confirmation Order, the Debtor shall have the discretion both before and after the Effective Date to modify, refinance or reduce the principal of any Secured Claim in the estate, provided such modification is made by noticed motion to all Secured Creditors holding claims on the applicable property impacted.

**10.5    Noticed Motion**: Settlement of any Litigation Action, modification of a loan, and objection to claims shall be by noticed motion only.

**10.6    Term of Injunctions or Stays:** Unless otherwise provided herein, all injunctions or stays arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**10.7    Injunction Against Interference With Plan:** Upon the entry of the Confirmation Order, all holders of Claims and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

**10.8    Injunction:** Except as otherwise provided in this Plan, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against the Debtor or the Estate are, with respect to any such Claims, permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the Reorganized Debtor or any of its property or any direct or indirect successor in interest to the Debtor or the Reorganized Debtor or any property of any such successor; (b) enforcing, levying, attaching (including, without limitation, any pre judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award,

decree or order against the Debtor or the Reorganized Debtor or any of its property or any direct or indirect successor in interest to the Debtor or the Reorganized Debtor or any property of any such successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or the Reorganized Debtor or any of their property or any direct or indirect successor in interest to the Debtor or the Reorganized Debtor or any property of any such successor; and (d) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law.

**10.9    Retention of Causes of Action/Reservation of Rights:** Except as specifically provided herein, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, Claims or Causes of Action that the Debtor may have or the Reorganized Debtor may choose to assert on behalf of the Estate in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Claims against any Person, to the extent such Person asserts a cross-claim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, Reorganized Debtor, or any of its agents or representatives; (ii) the avoidance of any transfer by or obligation of the Estate or the Debtor or the recovery of the value of such transfer; (iii) the turnover of any property of the estate; and/or (iv) Claims against other third parties.

Nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, Avoidance Action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Petition Date. The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, or other legal or equitable defenses which the Debtor had immediately prior to the Petition Date as fully as if the Reorganization Case had not been commenced.

///

///

**10.10 Exculpation:** None of the Debtor, the Reorganized Debtor, or any of their respective employees, agents, representatives, attorneys, consultants and advisors (acting in such capacity) shall have or incur any liability to any entity for any act taken or omitted to be taken in connection with and subsequent to the commencement of the Reorganization Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan, any other plan of reorganization or any compromises or settlements contained therein, any disclosure statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the transactions set forth in the Plan or in connection any other proposed plan; provided, however, that the foregoing provisions shall not affect the liability that otherwise would result from any such act or omission to the extent that such act or omission constituted breach of fiduciary duty, negligence or willful misconduct. Each of the foregoing parties in all respects shall have and shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities during the Reorganization Case and under the Plan.

**ARTICLE XI.**

**RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157 (but this Plan shall in no way expand the jurisdiction otherwise granted to the Bankruptcy Court pursuant 28 U.S.C. §§ 1334 and 157), over all matters arising in, arising under, or related to the Reorganization Case for, among other things, the following purposes:

(a)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom.

(b)     To determine any motion, adversary proceeding, avoidance action, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date.

(c)     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein.

     (d)    To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim or Administrative Expense Claim.

     (e)    To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated.

     (f)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court.

     (g)    To hear and determine any motion to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

     (h)    To hear and determine all Fee Claims.

     (i)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing.

     (j)    To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release, injunction or exculpation provisions set forth herein, or to maintain the integrity of this Plan following consummation.

     (k)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

     (1)    To hear and determine matters concerning state, local, and federal regulations, Claims or taxes.

     (m)    To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

(n)    To enter a final decree closing the Reorganization Case.

(o)    To recover all Assets of the Debtor and property of the estate, wherever located.

(p)    To sell real property free and clear of liens.

(q)    To approve any settlement of any litigation or other controversy.

<h2 style="text-align:center">ARTICLE XII.</h2>

<h2 style="text-align:center">MISCELLANEOUS PROVISIONS</h2>

**12.1    Completion of Plan:**   This Plan shall be deemed completed upon the Reorganized Debtor making all distributions from the Plan Distribution Account and other payments required under the Plan as provided in Article IV above.  Notwithstanding the foregoing, the Plan will be deemed completed as of December 31, 2019.

**12.2    Substantial Consummation:**   As of the Effective Date, upon the execution and delivery of the Plan Documents and commencement of distributions under the Plan, the Debtor may seek an order from the Bankruptcy Court determining that the Plan has been substantially consummated pursuant to section 1101 of the Bankruptcy Code.

**12.3    Amendments:**

**12.3.1 Plan Modifications:**  This Plan may be amended, modified, or supplemented by the Reorganized Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Claims pursuant to this Plan, the Reorganized Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

///

///

**12.3.2 Other Amendments:**  Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims

**12.4    Revocation or Withdrawal of this Plan:**  The Debtor reserves the right to revoke or withdraw this Plan prior to the Effective Date. If the Debtor takes such action, this Plan shall be deemed null and void.

**12.5    Cramdown:**  In the event a Class votes against this Plan, and this Plan is not withdrawn as provided above, the Debtor reserves the right to seek a "cram down" of this Plan pursuant to section 1129(b) of the Bankruptcy Code. To the extent any Class is deemed to reject this Plan by virtue of the treatment provided to such Class, this Plan shall be "crammed down" on the claimants within such Class pursuant to section 1129(b) of the Bankruptcy Code.

**12.6    Confirmation Order:**  The Confirmation Order shall, and is hereby deemed to, ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct, gross negligence, recklessness or fraud.

**12.7    Severability:**  If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is

valid and enforceable pursuant to its terms.

**12.8   Governing Law:**  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a Plan Document provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the principles of conflict of laws thereof.

**12.9   Section 1125(e) of the Bankruptcy Code:**  The Debtor has, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtor (and each of their respective affiliates, agents, directors, officers, employees, advisors and attorneys) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale and purchase of the securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or offer, issuance, sale or purchase of the securities offered and sold under this Plan.

**12.10  Expedited Determination:**  The Reorganized Debtor is hereby authorized to file a request for expedited determination under section 502(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtor, or the Reorganized Debtor, as the case may be.

**12.11  Time Bar to Payments:**  The Debtor shall stop payment on any distribution check that has not cleared through the Distribution Account within ninety (90) days of the date of issuance thereof. Requests for re-issuance of any such checks shall be made directly to the Debtor by the holder of the Allowed Claim with respect to which such check was issued. Any claim in respect of such voided check shall be made within one hundred and eighty (180) days after the date of the issuance of such voided check. If no claim is made as provided herein, all Claims in respect of voided checks shall be discharged and forever

barred. The amount represented by such unclaimed checks, and those undeliverable, after commercially reasonable diligence, shall be distributed pro-rata to the remaining holders of Allowed Claims, pursuant to the terms of this Plan. Distributions to holders of Allowed Claims shall be made to their last known address, which shall be presumed to be as set forth on the proof of claim filed by such Claimant, or if no proof of claim was filed, on the Schedules filed by the Debtor as may have been amended from time to time, unless a Claimant shall have supplied a new or corrected address in writing to the Debtor within two weeks prior to a Distribution to permit the Debtor to revise its records accordingly.

**12.12  Fractional Distributions:** Notwithstanding anything to the contrary contained in the Plan, no Cash payments of fractions of cents shall be made. Fractional cents shall be rounded to the nearest whole cent.

**12.13  Time:** In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**12.14  Waiver of Bankruptcy Rule 7062:** The Confirmation Order shall include: (i) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order; and (ii) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

**12.15  Compliance with Tax Requirements:** In connection with the Plan, the Debtor and the Reorganized Debtor, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and any distributions under the Plan, shall be subject to such withholding and reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim that is to receive a distribution under the Plan, shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligations, on account of any distributions. The Debtor has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to the Debtor for the payment of any tax obligations.

**12.16  Notices:**  All notices, requests and demands to or upon the Debtor and the Reorganized Debtor, to be effective shall be in writing (including by facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> If to Debtor:
>
> TownCenter Plaza, LLC
> 2275 Huntington Drive, #534
> San Marino, CA. 91108
>
> and
>
> John L. Smaha, Esq., Bar No. 95855
> 2398 San Diego Avenue
> San Diego, CA 92108
> T: (619) 688-1557
> F: (619) 688-1558

**12.17  Exhibits:**  All exhibits and schedules to this Plan, including the Plan Supplement, if any, are incorporated by reference into this Plan and are made a part hereof as if more fully set forth herein.

**12.18  Binding Effect:**  The provisions of this Plan (including the exhibits and schedules to, and all documents and agreements executed pursuant to or in connection with this Plan) and the Confirmation Order shall be binding on (i) the Debtor, (ii) all holders of Claims against the Debtor, whether or not impaired under the Plan and whether or not such holders have accepted or rejected the Plan, (iii) each Person or entity receiving, retaining or otherwise acquiring property pursuant to the terms of the Plan, (iv) any non-Debtor party to an executory contract or unexpired lease with the Debtor, (v) and any Person or entity making an appearance in this Reorganization Case, and (vi) each of the foregoing's respective heirs, successors, assigns, executors, administrators, officers, directors and agents.

**12.19  Business Records:**  The Debtor's business records shall be maintained at Debtor's present address.

**12.20  Means for Execution of Plan of Reorganization:**  The payments to be made under the Plan will be funded from the revenues of the Debtor's sale and liquidation of assets which shall be utilized to make the required distributions to creditors until December 31, 2019.  After the Effective Date of the Plan the Debtor's business, if any, shall continue to be run by the Debtor.

**12.21  Compliance with Post-Confirmation Reporting and U.S. Trustee's Fees:** On the Effective Date of the Plan, Debtor shall be impressed with the duty to comply with the post-confirmation requirements and U.S. Trustee fees set forth in 28 U.S.C. Section 1930(a)(b).

**ARTICLE XIII.**

**<u>CONCLUDING STATEMENTS BY DEBTOR</u>**

Since filing for bankruptcy, Debtor has worked diligently to protect and preserve the assets of the estate and the collective rights of its creditors and to promulgate a Plan of Reorganization for repayment of claims to all of his creditors.  Debtor has prepared this Plan in an attempt to treat all creditors in a fair and equitable fashion as provided for by the provisions of the United States Bankruptcy Code.

In summary, Debtor believes that acceptance of this Plan will be in the best interests of Debtor's reorganization and payment of all of its creditor's claims to the greatest extent possible.

Dated: May 3, 2017

                                /s/ John L. Smaha
John L. Smaha, Esq.
SMAHA LAW GROUP, APC
Counsel for Debtor,
TownCenter Plaza, LLC

W:\Towncenter plaza\Plan.D.S\100.Plan.4-25-17.final.further.revisions.wpd

1  John L. Smaha, Esq.  Bar No. 95855
   Gustavo E. Bravo, Esq. Bar No. 218752
2  **SMAHA LAW GROUP APC**
   2398 San Diego Avenue
3  San Diego, California 92110
   (619) 688-1557  Telephone
4  (619) 688-1558  Facsimile
   Attorneys for Debtor, Towncenter Plaza, LLC
5
                    **UNITED STATES BANKRUPTCY COURT**
6                 **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

7  **PROOF OF SERVICE**              Case No. 17-00623-11

8                                    *In re TownCenter Plaza, LLC*

9
          I am employed in the City of San Diego, California.  I am over the age of 18 and not a party to the
10  within action.  My business address is 2398 San Diego Avenue, San Diego, California 92110.

11        On May 3, 2017, I caused to be served the following document(s) described as:

12        1.      **PLAN OF REORGANIZATION**

13  in this action by placing the true copies thereof enclosed in a sealed envelope addressed as follows:

14  U.S. TRUSTEE
    Department of Justice
15  402 West Broadway, Ste. 600
    San Diego, CA 92101
16

17  [X]   (**BY MAIL**) I served the individual named by placing the documents in a sealed envelope.  I then
          placed it for collection and mailing with the United States Postal Service this same day, at my address
18        shown above, following ordinary business practice.

19  []    (**Electronic Notice Via the ECF System**).  Pursuant to controlling General Order(s) and Local
          Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and
20        hyperlink to the document.  On May 3, 2017, I checked the CM/ECF docket for this bankruptcy case
          or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice
21        List to receive NEF transmission at the email addresses indicated below:

22
          I declare under penalty of perjury under the laws of the State of California that the foregoing is true
23  and correct.  Executed on May 3, 2017, San Diego, California.

24                                    */s/ Amelda M. Dawson*
                                      Amelda M. Dawson
25

26

27

28

                                      1